> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit[*]
### Chicago, Illinois 60604

Submitted June 14, 2024
Decided June 17, 2024

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

JOSHUA P. KOLAR, *Circuit Judge*

No. 23-3058

| | |
|---|---|
| ROBERT DORGAY, | Appeal from the United States District Court |
| *Plaintiff-Appellant,* | for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 22-C-847 |
| | |
| PAUL REIF, et al., | William C. Griesbach, |
| *Defendants-Appellees.* | *Judge.* |

# O R D E R

Robert Dorgay sued individuals from the City of Milwaukee Police Department, the Milwaukee County District Attorney's office, and the Wisconsin Department of Corrections (probation wing), alleging that they conspired to violate his constitutional rights when they arrested and prosecuted him. *See* 42 U.S.C. § 1983. The district court

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. Rule 34(a)(2)(C).

dismissed several claims at screening for being untimely or insufficiently pled, and later entered judgment on the pleadings on statute-of-limitations grounds. We affirm.

Dorgay, a Wisconsin prisoner, filed a federal complaint alleging constitutional violations in connection with the administration of his state probation, an arrest, and his prosecution on multiple state charges. We accept his factual allegations as true at the pleadings stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). Dorgay alleges that, in June 2014, his girlfriend falsely reported that he had assaulted her, and his probation agent (then, Brenda Muench), while investigating, misrepresented facts, manufactured evidence, and submitted false statements to police officers and the court supervising his probation. Dorgay complained to the probation office about Muench's misconduct and her supervisor's failure to discipline her, but no action was taken. On November 21, 2014, the court revoked his probation and imposed a yearlong sentence.

After his release on August 19, 2015, Dorgay was arrested again on August 26 for violating the terms of his probation. According to the complaint, Dorgay's probation officer at the time (Chad Schepp), falsified a violation report that led to his arrest by Milwaukee police officer Michael Dedrich, during which some officers kicked him and slammed his face into the ground, and others did not intervene. After the arrest, Dorgay was criminally charged with resisting arrest and bail jumping, based at least in part on Dedrich's falsified police report. Dorgay insists that Dedrich and the other police officers lied to the court during hearings on these charges, failed to report the use of force to their supervisors, and misrepresented facts during an internal investigation.

Eventually Dorgay went to trial on all pending charges: domestic violence, bail jumping, and resisting arrest. On the second day of trial, July 26, 2016, Dorgay had a "scheduled office visit" with Schepp, his probation officer. He arrived twenty minutes early. About ten minutes after his scheduled appointment time, he called Schepp, who "deliberately refused to see him." Schepp told him not to leave before they met, or he could be returned to prison. Dorgay overheard secretaries say that the prosecutor overseeing his trial had directed Schepp to delay Dorgay from attending the trial. After waiting some more, he overheard that the police officers were on their way to arrest him, so he left the probation office. But he did not go to the courthouse to attend his trial; instead, he removed his GPS monitor and fled.

The trial proceeded without Dorgay. On July 29, 2016, the jury found him guilty of various domestic abuse charges, including second-degree sexual assault/use of force, strangulation and suffocation, false imprisonment, intimidating a victim, and battery.

The jury acquitted him of the two charges arising from the August 2015 arrest. Dorgay asserts that his convictions resulted from the false testimony of witnesses.

Dorsay's federal lawsuit, which he filed on July 25, 2022, targeted nearly everyone involved in his November 2014 probation revocation, the August 2015 arrest, and his subsequent prosecution. He asserted that the individual defendants deprived him of his civil rights in various ways and also conspired with each other to do so. As relevant to this appeal, he alleged excessive force and failure to intervene during his arrest; prosecution based on false statements by police officers, probation officers, and witnesses; and the use of a ruse to keep him from attending his trial.

The district court initially dismissed the entire complaint, without prejudice, at screening. *See* 28 U.S.C. § 1915A. Citing the six-year statute of limitations, the district court dismissed all claims that accrued before July 25, 2016 (essentially, everything relating to events before the trial).[1] The district court then determined that Dorgay's other allegations failed to state a claim.

Instead of amending his complaint, Dorgay moved for reconsideration, arguing that all claims were timely because he alleged a "continuing violation" and because the last act of the alleged conspiracy occurred within six years of his suit. The district court rejected these arguments but reinstated Dorgay's claims against the police officers who arrested him, on the theory that the claims did not accrue until after his partial acquittal.

After the remaining defendants—two probation officers and four Milwaukee police officers—answered the complaint, Dorgay moved for leave to amend his complaint. The proposed amended complaint largely mirrored the original, although Dorgay sought to sue an additional prosecutor and included new allegations of a "meeting of minds" between various defendants. The district court denied leave, explaining that the proposed amended complaint violated local rules. Regardless, the court continued, the claims were time-barred, the additional "facts" were merely conclusory assertions, and the new claim was barred by prosecutorial immunity.

───────────────

[1] For § 1983 claims, federal courts borrow the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). At the time of the underlying events, Wisconsin had a six-year statute of limitations for personal injuries. *See* WIS. STAT. § 893.53 (2011), *amended by* 2017 Wis. Act 235 (eff. Apr. 5, 2018) (reducing applicable statute of limitations to three years).

Eventually, the two groups of defendants moved for judgment on the pleadings based on the statute of limitations and, alternatively, for summary judgment on the merits. They argued that the claims for excessive force and failure to intervene were time-barred because they accrued on August 26, 2015, the day that Dorgay was arrested, so the statute of limitations had expired on August 26, 2021. Dorgay did not timely respond to the motions. The district court agreed with the defendants that the excessive force and failure to intervene claims had accrued immediately and could have been filed without a favorable termination of the related prosecution. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). The court therefore granted the defendants' motions and entered judgment in their favor.

On appeal, Dorgay seeks restoration of all claims dismissed on the defendants' motions or at screening, as well as recognition that he stated a federal malicious prosecution claim. He also challenges the denial of leave to amend his complaint.

We begin with our de novo review of the decision to dismiss Dorgay's constitutional claims arising from his arrest in August 2015 as outside the six-year statute of limitations. *See Lisby*, 74 F.4th at 472. Dorgay argues that his claims were timely because the alleged wrongful acts were a continuing violation of his constitutional rights and part of a conspiracy that extended into the limitations period. (He does not contend that the claims are otherwise timely.)

Dorgay is incorrect. First, the continuing violation doctrine did not delay the accrual of Dorgay's excessive force and failure-to-intervene claims. A continuing violation occurs when the illegal wrong itself—not the harm it caused—"perdures beyond the initial illegal act" such that it "can be characterized as a continuing wrong." *See United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350–51 (7th Cir. 2019). But the probation officer's investigation of domestic violence in 2014 and the ensuing revocation, the arrest in July on different grounds, and the force used during that arrest, were discrete acts by defendants from different government entities. The alleged wrongs that happened within the statute of limitations were not a continuation of that conduct. We have been clear that arrest-related claims accrue immediately and are not subject to a favorable termination rule; indeed, those claims can be brought irrespective of any prosecution. *See Evans*, 603 F.3d at 363. So the continuing violation doctrine does not save the claims based on events in 2014 and 2015.

Dorgay next argues that both his original and proposed amended complaint sufficiently pleaded a conspiracy among the defendants that continued into the limitations period, making his 2014 and 2015 claims timely. But even if we assume a

properly pleaded conspiracy, the existence of a *civil* conspiracy cannot render timely claims based on events that occurred before the limitations period. *See Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016). Thus the district court properly addressed the merits only of claims that accrued within the six years before the complaint.

Dorgay next challenges the dismissal at screening of some of his timely claims. He first argues that he stated a claim of unlawful detention under the Fourth Amendment by alleging that, on the second day of his trial, Schepp directed him to report to the probation office for a "scheduled office visit" and then made him wait. Dorgay appears to contend that this "detention" was unlawful because, he alleges, Schepp arranged the meeting at the prosecutors' request to keep Dorgay away from the battery victim at his trial. But, regardless of motive, Schepp had the authority to order Dorgay to attend regular meetings and charge a violation should he fail to attend. *See* Wis. Adm. Code DOC § 328.04 (2024). Further, the hallmark of the Fourth Amendment is the reasonableness requirement, *see Riley v. California*, 573 U.S. 373, 381–82 (2014), and Dorgay is a probationer with a diminished liberty interest; he "does not retain the absolute right to come and go as he pleases." *Alston v. City of Madison*, 853 F.3d 901, 909 (7th Cir. 2017) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)).

To the extent that Dorgay contends that the appointment became an unlawful seizure when it did not start on time, his assertion lacks any support. He says that he waited a total of 40 minutes (20 minutes before and after the scheduled time) before fleeing. But he cites no authority for his premise that a lawfully ordered probation meeting could become an unreasonable seizure upon a short delay, even if intentional. *See Mitchell v. Doherty*, 37 F.4th 1277, 1286 (7th Cir. 2022) ("It is not our job to do the legal research" that a party omits) (citation omitted). Dorgay also suggests that the delayed meeting kept him from his trial, infringing his rights to due process, counsel, and access to the courts. But we agree with the district court that he failed to state a claim because neither Schepp nor the prosecutors can be responsible for his decision to flee, rather than attend his trial. Moreover, his decision to leave before the meeting began also underscores that Dorgay was not, in fact, "detained," even if he would incur consequences for missing the meeting.

Dorgay next contends that his due process rights were violated because his probation officers and others gave false testimony at his trial. But witnesses are immune from civil liability for testimony—even false testimony—provided in judicial proceedings. *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). So too are prosecutors absolutely immune from liability for their acts during judicial proceedings, including presenting false testimony. *See Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016).

Next, Dorgay argues that the district court should have understood his complaint to contain a Fourth Amendment claim of malicious prosecution against officer Dedrich. He points to his allegations that Dedrich drafted a report and a sworn statement that formed the basis of the charges of resisting arrest and bail jumping, but Dorgay was found not guilty of that conduct. But under federal law, Dorgay had to plausibly allege that "the malicious prosecution resulted in a seizure." *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022). Dorgay does not connect Dedrich's alleged actions to any custodial seizure, however. The arrest (before the resisting and other charges) was for violating the terms of his probation—and *that* led to his detention. Even if he were seized while being processed for resisting arrest and bail jumping—we cannot tell from the pleadings—the custody overlaps with his detention from the probation violation. Because he would have been jailed notwithstanding the charges that originated with Dedrich, it not reasonable to infer that the officer's actions (allegedly accusing him falsely of resisting arrest) were responsible for this seizure. And Dorgay does not allege that the probation violations fail to sufficiently justify a seizure.[2]

Last, we consider whether the district court erred in denying leave for Dorgay to file his amended complaint, a decision we review for abuse of discretion. *Nowlin v. Pritzker*, 34 F.4th 629, 635 (7th Cir. 2022). It did not. The district court ruled that the proposed amended complaint did not comply with Local Rule 15(b) because it did not identify the new facts in his complaint. This is enough; "district courts may require strict compliance with their local rules." *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). We need not address the district court's alternative ground—futility—for denying leave to amend, but it was sound for largely the same reasons as its decisions on the original complaint.

AFFIRMED

---

[2] To be sure, Dorgay contends that the arrest for this probation violation and ensuing revocation, like everything else, was based on false allegations. But he cannot base a claim on these allegations at this time because it is barred by the rule in *Heck v. Humphrey*, 512 U.S. at 486–87. *See Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000) ("[A claim that] would necessarily imply the invalidity of [the prisoner's] Wisconsin parole revocation … cannot be shown through a § 1983 suit."). That revocation and sentence have not been overturned.